# Mott *v*. Jackson, *et al.*

### *Breach of Contract.*

(Decided May 11, 1911.   55 South. 528.)

1. *Action; Contract or Tort.*—A complaint alleging that a common carrier agreed for a reward to transport freight for plaintiff, and wrongfully failed and refused to do so, whereby plaintiff was damaged, was a complaint on the contract, and was not ex delicto.

2. *Contracts; Offer; Acceptance; Consideration.*—Where one party makes an offer dependant upon some act of the other party, which act is performed, that is an acceptance of the offer, and is a sufficient consideration to support the contract.

3. *Same.*—While a party making an offer may specify how it shall be accepted in order to complete it, yet, if he does not so specify, anything which in law would be an acceptance is sufficient.

4. *Same; Proposal; Revocation.*—A proposal revocable in its nature, becomes effective if accepted and acted upon before annullment or revocation.

5. *Same; Carriage; Action; Pleading.*—Where the complaint alleged that the defendant common carrier, promised and agreed with plaintiff for a reward to receive and transport certain staves from a designated place, that plaintiff was notified by defendant to have the staves prepared for loading, and that defendant wrongfully refused to accept and transport them when tendered, all to plaintiff's damage, it was not demurrable for failure to allege that plaintiff promised and agreed to ship the staves and pay the freight thereon; the allegation that plaintiff was notified by defendant to have the staves prepared for loading, showing at least that plaintiff was to accept the contract by acting and not by written acceptance, the word agreed meaning "brought into harmony, united in opinion, settled by consent."

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by John D. Mott against M. R. Jackson and others. Judgment for defendants, and plaintiff appeals. Reversed, rendered, and remanded.

The complaint is as follows:

Count 1: "Plaintiff claims of the defendants the sum of $1,500 damages, for that, whereas, on, to wit, the 22d day of January, 1908, the said defendants were engaged in running a steamboat, viz., the Liberty, as a

common carrier on the navigable waters of Alabama, and on or about such time promised and agreed as such carriers to and with plaintiff to receive for him for hire on the next down trip of the boat, and on said trip to carry for him, a lot of staves, to wit, 10,000 in number, from Davis' Bluff, a landing on the Tombigbee river, and deliver the same safely at the wharves or docks in the city of Mobile, in the state of Alabama, for a reward then and there to be paid by the said plaintiff; that plaintiff, in consideration of said promise on the part of the defendants to carry said staves, had the same placed on the margin of the river at the usual and customary place for loading that kind of freight on said steamboat, the Liberty, and when the said boat arrived on the said down trip announced himself willing to load said staves on said boat, when defendants willfully, knowingly, and wrongly neglected and refused to take said staves. And plaintiff alleges that their refusal was without just cause or good excuse, and that before plaintiff had shipped said staves by any other carrier a freshet came in the river and washed said staves away, and they became entirely lost to plaintiff."

Count 2: "Plaintiff claims of the defendants the further sum of $1,500 damages, for that, whereas, to wit, on the 22d day of January, 1908, the defendants were then and there engaged as common carriers, and in the hauling of freight and passengers for hire over and upon the navigable waters of Alabama by means of a steamboat propelled by steam, and were using as means of transporting said freight and passengers the steamboat Liberty; that on the day and date aforesaid said defendants as such common carriers undertook and promised plaintiff to receive for him on the next down trip of the boat, and on said trip to carry and deliver for hire, a large lot of goods, wares, and

merchandise, to wit, staves, of the number, to wit, of 10,000, from a certain landing on the Tombigbee river known as 'Davis' Bluff,' and to safely deliver said staves from said landing to the wharves or docks in the city of Mobile, in said state of Alabama, and plaintiff was then and there notified by said defendants, or some of them, to have said staves prepared and ready to load on said down trip, and plaintiff then and there went to great expense in hiring a large number of hands, and did prepare and place at the margin of the river said staves prepared and ready for loading in proper piles for being handled and loaded on said steamboat, or upon barges to be furnished by the same; that said boat came on said down trip according to its usual custom to the point where said staves were placed, which was a regular landing for said boat on one of the navigable rivers of Alabama, to wit, the Tombigbee river, and said plaintiff did then and there have tendered to the said boat the said staves, and requested the said boat to receive the same and transport from said landing to the wharves or docks at Mobile, Ala., and notwithstanding plaintiff was then and there able to have said staves loaded on said boat and to pay the freight thereon." And it concludes from here on as the first count, with the additional averment that the loss resulted from the carelessness, and willfulness of said defendants in refusing to accept said staves for transportation.

The third count alleges the same state of facts as the other counts, but alleges the acts complained of to be the acts of the servants or agents of the defendants in charge of or operating said boat, while acting within the line and scope of their employment.

The demurrers take the point that no consideration for the defendants' promise is alleged, and because the count does not allege that the plaintiff agreed and

bound himself to ship some staves and pay the freight thereon, and others not necessary to be here set out.

RICH & HAMILTON, and W. D. DUNN, for appellant. Irrespective of the nature of these accounts, whether in contract or in tort, or some in contract and some in tort as allowed by the present Code, the demurrers were improperly sustained. If in contract, then they allege with sufficient certainty mutuality and a mutual consideration.—*Baxley v. Tallassee* 128 Ala. 189; *Houston R. R. Co. v. Campbell,* 43 L. R. A. 227, and Note 2; 31 N. E. 853; 61 Tex. 491; 16 S. W. 102; 12 A. & E. Ann. cases, 885. The facts alleged show such a tender as constituted an acceptance and a completion of the contract.—124 Mass. 421; 80 N. W. 95; 16 S. W. 539; 20 L. R. A. 310; 65 S. E. 285; 28 S. W. 819; 65 S. E. 583; 16 S. W. 102; 71 Ill. 540; 26 N. E. 159; 5 Pic. 380; 104 Mass. 214; 85 Ala. 292; 9 Cyc. 270. Applying these principles to the counts it is clear that they were not subject to the demurrers interposed. If the complaint was in tort, then they were not subject to the demurrers.—*Jones v. Sims,* 9 Port. 247; *L. & N. v. McQuire,* 79 Ala. 399; *Lee v. M. & O.,* 58 Ala. 165; 68 Am. Dec. 574; 99 S. W. 375; Hutchinson on Carriers, secs. 150, 1344, and 1799; 4 Elliott on Railroads, Sec. 1471. The counts were on the contract.—*Tallassee Falls Mnfg. Co. v. Wes. Ry. of Ala.,* 117 Ala. 523.

GREGORY L. & H. T. SMITH, and WM. G. CAFFEY, for appellee. A unilateral promise or an unaccepted offer will not support an action.—*Baxley v. Tallassee,* 128 Ala. 185; *C. & G. E. Ry. Co. v. Dane,* 43 New York, 240. The action was in contract as undertaking to carry on a particular voyage and in the absence of a special contract the carrier's duty was to transport within a reasonable time.—6 Cyc. 442. It is essential that the de-

[Mott v. Jackson, et al.]

fendant know the nature of the action against him so as to determine the measure of damages.—3 Hutchinson on Carriers, Sec. 1358; 4 Elliott on Railroads, 758. The complaint should have specified the time of performance since an unusual amount of freight might have rendered defendant incapable of carrying at the time of the offer and this would have been a sufficient excuse for a refusal to carry on a named trip.—6 Cyc. 445; 1 Hutchinson on Carriers, Sec. 446; 4 Elliott on Ry., Sec. 1691. But if the suit is on a contract to carry by a particular vessel on a particular trip, the defendant might be liable notwithstanding the press of other business.—12 N. Y. 99; 64 S. W. 477; 6 Cyc. 445. Every intendment should be taken against the pleader and indulged to make the action ex contractu rather than ex delicto.—88 N. Y. 629; 4 Enc. of P. & P. 915. There is nothing in the counts to justify the assumption that the offer constituted or contemplated a unilateral contract. —Cyc. 244, 247, 256, and 270. Nothing is alleged which constitutes an acceptance.—9 Cyc. 256; Id. 793; 43 N. Y. 240; 1 Denio 226. It is a cardinal principle that all pleadings are to be construed against the pleader, and the pleadings here do not show an offer and an acceptance.—42 N. Y. 240; 59 Pac. 217; *Daniels v. Carney,* 148 Ala. 81; *F. & D. Co. of Maryland v. Walker,* 158 Ala. 129.

SIMPSON, J.—This action is by the appellant against the appellees, as common carriers, by water, for damages for refusal to receive freight. Demurrers were sustained to the complaint, as amended, the plaintiff refused to amend, and the errors claimed are the action of the court in sustaining the demurrers to the several counts of the complaint.

The counts of the complaint (which will be set out by the reporter) are on the contract, and not ex de-

licto.—*Wilkinson v. Moseley,* 18 Ala. 288, 290, et seq.; *Mobile Life Ins. Co. v. Randall,* 74 Ala. 170, 176; *Mc-Daniel v. Johnston,* 110 Ala. 526, 532, 19 South. 35; *Southern Railway Co. v. Rosenberg,* 129 Ala. 287, 30 South. 32; *W. U. Tel. Co. v. Littleton,* 169 Ala. 99, 53 South. 97.

The insistence of the appellees is that the contract set out in the several counts of the complaint is unilateral, and does not allege any consideration for the promise or any acceptance of the offer. It is familiar contract law that where one party makes an offer, dependent upon some act of the other party, and the other party performs the act, that is an acceptance of the offer, and constitutes a sufficient consideration to support the contract.—6 Cyc. 429, and notes. It is true that a mere general offer by a carrier to receive and transport goods generally would be too indefinite, and would include nothing but its common-law liability, and under such an offer a failure to receive goods for shipment would be subject to the defenses applicable to an action on the common-law duty, such as that the vessel was already loaded to its full capacity; but when the carrier says to the shipper, "I will receive and carry your freight at a particular time [as on the next down trip of the boat] and at a particular place [as at Davis' Bluff]," it cannot mean anything except that "I will have the space and facilities, when the boat reaches said landing, to receive your goods, and if you will have them there at that time I will receive and transport them." It is true that, up to that time, the carrier's promise was but an offer, or a proposition; but, if it had desired to protect itself against the contingency of the shipper's not accepting the proposition, by having his goods ready for shipment, or of his receiving a boat load of freight before reaching said point, he should

have required a specific acceptance of the proposal, or inserted a proviso as to space, etc.

The appellees insist that the offer should specify whether it is to be accepted by promise or by act. While a party making an offer has a right to specify how it shall be accepted, in order to complete the contract, yet, if he does not so specify, it is clear that anything which in law would be an acceptance, so long as the offer is left open, would be sufficient, and an acceptance by act is as effective as acceptance by words. In an early English case, it was said: "If I say to another, 'If you will go to York, I will give you £100,' that is, in a certain sense, a unilateral contract. He has not promised to go to York. But, if he goes, it cannot be doubted that he will be entitled to receive the £100. His going to York at my request is a sufficient consideration for my promise."—*Gt. N. Ry. Co. v. Witham*, 9 Law Rep. (C. C. P.) 12, 19. If the shipper had been standing on the river bank, and the captain of the boat had said, "I will take your staves and carry them to Mobile for a reasonable compensation," and the shipper, without saying a word, had immediately delivered the goods to the boat, or offered them to its employees, it cannot be doubted that that would have been a sufficient acceptance to close the contract. The offer, then, being still open and unrevoked, was necessarily a continuing one, and its acceptance at one time, as effectual as at another.

One of the counts also goes into particulars, and shows that special instructions were sent by the defendants to have the goods prepared and ready at the time and place, and that the plaintiff, in accordance with the instructions, had gone to considerable expense to comply therewith; but we hold that the acceptance by act of the continuing offer completed the contract.

In the case of *Bernstein v. Lans*, 104 Mass. 214, where one man said to another in a barroom, "If you will obtain a purchaser for my place, I will give you $50," there was no acceptance; but the party did afterward obtain a purchaser, with whom the promisor traded, without even knowing that the purchaser had been sent to him by the promisee. It was held that there was evidence for the jury to find a continuing offer and acceptance. This principle is supported by numerous authorities.—*Train v. Gold*, 5 Pick. (Mass.) 380, 384-387. In a case where a carrier agreed to transport certain classes of freight, between certain stations, at a certain rate, for a period of 12 months, the Supreme Court of Massachusetts held that "this agreement constituted a continuing offer, on the part of the defendant, to transport such lumber as the plaintiff should furnish, at the specified points, during the period named, and was binding on the defendant whenever, during that time, the plaintiff tendered lumber for transportation according to its terms.—*Harvey v. Conn. & P. R. R.*, 124 Mass. 421, 422, 26 Am. Rep. 673. It is true in this case the court refers to the plaintiff's having informed the defendant of certain matters "at the time that he desired to make this contract" but that was merely for the purpose of arriving at the measure of damages. It cannot be inferred from that remark that there was a binding contract before the tender of the goods, for the court places its holding distinctly on the ground that it was a continuing offer.

"A proposal, although revocable in its nature, becomes effective if accepted and acted upon before annulled by revocation."—*Cleveland, C., C. & I. Ry. Co. v. Closser*, 126 Ind. 368, 26 N. E. 165 (second column), 9 L. R. A. 754, 22 Am. St. Rep. 593; *Wellington v. Apthrop*, 145 Mass. 69, 13 N. E. 10, 12; *Bigelow v.*

*Chicago, B. & N. Ry.,* 104 Wis. 109, 80 N. W. 95, 97. The only case which has been brought to our attention, seeming to hold a contrary view, is that of *Chicago & G. E. R. R. v. Dane,* 43 N. Y. 240. It must be noted, however, that in that case the contract was general, to carry freight during the months of April, May, June, July, and August, evidently contemplating that the railroad should have the benefit of carrying freights during all of those months, and the offer of the shipment was not until in August; and the court, in referring to this feature of the case, says: "Upon receipt of the defendant's letter, the plaintiff was bound to accept in a reasonable time and give notice thereof." In the present case there was no question of reasonable time. The proposition was to receive the freight at a particular time and place, and the acceptance was at that time and place. However, the weight of authority sustains the principles declared in the cases above cited.

Where a second mortgagee of land proposed to the first mortgagee to pay rents in consideration of the latter's forbearing to foreclose, it was held that his actually forbearing was a sufficient acceptance, though there was no express agreement to do so.—*Marshall v. Old,* 1 Colo. App. 32, 59 Pac. 217. In our own case of *Baxley v. Tallassee & Montgomery R. R. Co.,* 128 Ala. 183, 29 South. 451, the letter upon which the right of damages was claimed was merely one from one railroad officer to another, stating that he had agreed to make a certain rate to Baxley, and Baxley to have weekly inspections and shipments. It is true that the decision states that there can be no doubt that, "had the defendant supplied the cars, and Baxley had failed to load them with ties for transportation, and refused to pay the charges stipulated for transportation, he would have violated his agreement," and that this obli-

[Mott v. Jackson, et al.]

gation "imparted mutuality to the contract." So the case does not discuss the principle of a distinct proposition and the acceptance of it, by act and not by words. While it is true that some of the cases, where the carrier agreed to furnish cars, indicate that the shipper had applied for the cars, yet they do not militate against the principle above declared.

The word "agreed" is defined as "brought into harmony; united in opinion; settled by consent," etc. (Standard Dict.) ; and, where a bill averred that "the defendant agreed that his daughter was to have certain slaves," it was held that it "is synonymous with contracted, and hence evidence that the defendant gave the slaves to his daughter did not support the allegation." —1 Words & Phrases, 279; *McKisick v. McKisick*, Meigs, 427, 433. So, when the first and second counts alleged that the defendant "promised and agreed," or "undertook and promised," it must at least mean something more than a mere general offer, and shows that it was on an application for the same, especially when it refers to a special trip, at a designated place; and when, in the third count, it is further alleged that "plaintiff was notified by the servants and agents of defendants  *  *  *  to have said staves prepared and ready for loading," it shows at least that the plaintiff was to accept the contract by acting, and not by written acceptance. While the pleading might have been more perspicuous, the counts were not subject to the demurrers.

The judgment of the court is reversed, and a judgment will be here rendered, overruling the demurrers and remanding the cause.

Reversed, rendered, and remanded.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.